**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **VANTAGE MICRO LLC,**<br><br>    Plaintiff,<br><br>v.<br><br>**MICROCHIP TECHNOLOGY INC.,**<br><br>    Defendant. | CA No. WA:19-CV-00581-ADA<br><br>**DEMAND FOR JURY TRIAL** |

**PLAINTIFF VANTAGE MICRO LLC'S OPPOSITION TO MICROCHIP TECHNOLOGY INC.'S MOTION FOR ATTORNEY FEES AND COSTS AND CROSS-MOTION FOR FEES AND COSTS**

Date:  December 21, 2020

                                                        DEVLIN LAW FIRM LLC

                                                        */s/ Alex Chan*
                                                        Timothy Devlin
                                                        tdevlin@devlinlawfirm.com
                                                        Henrik D. Parker
                                                        hparker@devlinlawfirm.com
                                                         Alex Chan
                                                         State Bar No. 24108051
                                                         achan@devlinlawfirm.com
                                                         DEVLIN LAW FIRM LLC
                                                         1526 Gilpin Avenue
                                                         Wilmington, Delaware 19806
                                                         Telephone: (302) 449-9010

                                                         *Attorneys for Plaintiff Vantage Micro LLC*

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................... 1
II.    THE RELEVANT FACTS SHOWING MICROCHIP'S UNREASONABLENESS ....... 1
III.   THERE IS NO BASIS FOR AWARDING MICROCHIP FEES AND COSTS ............... 3
       A.     It Was Microchip Who Unnecessarily Prolonged This Action ............................. 3
       B.     Vantage Litigated Entirely Reasonably ................................................................. 3
              1.     Vantage's Settlement Demands Were Reasonable ..................................... 3
              2.     Vantage Did Not Delay, Much Less "Routinely Delay," Notice of
                     Changed Litigation Positions ...................................................................... 5
              3.     Microchip, Not Vantage, Misrepresented Facts to this Court .................... 6
              4.     Vantage's Own Claims For Sanctions Are Well-Supported ....................... 6
       C.     Vantage Did Not File Multiple Nuisance Suits ....................................................... 7
       D.     Vantage Conducted Reasonable Pre-Filing Investigations .................................... 9
IV.    THIS COURT SHOULD AWARD VANTAGE ITS ATTORNEY FEES AND COSTS
       FOR OPPOSING MICROCHIP'S FRIVOLOUS MOTION .......................................... 10
V.     CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AdjustaCam, LLC v. Newegg, Inc.*,
  861 F.3d 1353 (Fed. Cir. 2017) ................................................................................................ 8

*Blackbird Tech LLC v. Health In Motion LLC*,
  944 F.3d 910 (Fed. Cir. 2019), *cert. denied*,
  140 S. Ct. 2765 (2020) ............................................................................................................. 9

*Chambers v. NASCO, Inc.*,
  501 U.S. 32
  111 S. Ct. 2123,
  115 L. Ed. 2d 27 (1991) ......................................................................................................... 10

*Iris Connex, LLC v. Dell, Inc.*,
  235 F. Supp. 3d 826 (E.D. Tex. 2017) ..................................................................................... 4

*My Health, Inc. v. ALR Techs., Inc.*,
  2017 U.S. Dist. LEXIS 209273 (E.D. Tex. Dec. 19, 2017) .................................................. 6, 8

*Phoenix Licensing, LLC v. Consumer Cellular, Inc.*,
  No. 2:16-cv-00152-JRG-RSP,
  2018 U.S. Dist. LEXIS 40210 (Mar. 12, 2018) ....................................................................... 4

*SFA Sys. v. Newegg Inc.*,
  793 F.3d 1351 (Fed. Cir. 2015) ................................................................................................ 7

*ThermoLife Int'l LLC v. GNC Corp.*,
  922 F.3d 1347 (Fed. Cir. 2019) ............................................................................................ 7, 8

*Toon v. Wackenhut Corrections Corp.*,
  250 F.3d 950 (5th Cir. 2001) ................................................................................................. 10

**I.      INTRODUCTION**

Microchip's Corrected Motion for Attorney Fees and Costs (Dkt. No. 71-1) ("Motion") is frivolous and a waste of this Court's and Vantage's time.  The alleged conduct is the exact type of reasonable conduct that litigants should undertake: offering reasonable settlement demands lower than prospective recovery; voluntarily canceling an expert deposition and timely withdrawing the '508 patent when circumstances changed; and willingly dismissing questionable products before discovery to minimize pending disputes between the parties.

On the other hand, instead of reasonably resolving the case, Microchip chose to act in a manner that abused this Court's procedures and Vantage.  In fact, it is Microchip's actions—recanting a walk-away offer after two days when Vantage accepted it and then seeking to extort money from Vantage after preliminary claim constructions; concealing its damages exposure for the '508 patent; threatening to pursue attorneys' fees on frivolous grounds not even presented in this Motion; failing to disclose, despite full knowledge, parallel cases that have advanced into merits stages; contending "nuisance value" when it knew (from documents produced to it) that Vantage's recovery from licensing is orders of magnitude greater, and finally filing this motion replete with misstatements and mischaracterizations—that are worthy of sanctions.  The Motion should be summarily denied and Vantage hereby moves to be awarded its fees and costs for having to continue this case and particularly for having to prepare this Opposition.

**II.     THE RELEVANT FACTS SHOWING MICROCHIP'S UNREASONABLENESS**

On September 21, 2020, as soon as it completed an investigation of newly-revealed potential prior art, Vantage informed Microchip that it would withdraw the '508 patent.  (Chan Decl. at ¶¶3-4, 7).[1]  Notably, this was the same date that Vantage notified another pending

---

[1] Citations to Exhibits in this brief refer to the Exhibits attached to the co-filed Declaration of Alex Chan in Opposition to Microchip Technology Inc.'s Motion For Attorney Fees and Costs.

1

defendant, Texas Instruments, that it would withdraw the '508 patent from that action.  (*Id.* at ¶8; Ex. 14.)  That patent was formally dismissed nine days later (Dkt. 54) and a week after that, Vantage reduced its settlement demand to $150,000 given the limited damages period of the remaining patent.  (Chan Decl. at ¶11.)  The action against Texas Instruments was formally dismissed on November 10 after reasonably resolving with that entity.  (Ex. 15.)

Microchip first demanded a walk-away settlement on October 19, 2020 (Chan Decl. at ¶12; Ex. 5) and repeated the suggestion in the late evening of October 27, 2020.  (Dkt. 70-4; Chan Decl. at ¶15.)  Microchip stated unequivocally that it would seek fees *if* Vantage continued the action and did not accept the walk-away offer "***before parties and the Court invest additional resources in preparing for and conducting the upcoming November 5, 2020 Markman hearing***."  (Dkt. 70-4 at 3; emphasis added.)

Contrary to Microchip's representation to the Court (Motion at 3), Vantage never "declined Microchip's walk-away offer."  Instead, on October 29, Vantage communicated its acceptance of the offer.  (Chan Decl. at ¶16; Ex. 7.)  Microchip, however, unilaterally withdrew the offer, stating that it was "no longer on the table."  (Ex. 8).  Instead, Microchip demanded for the first time that Vantage pay Microchip $30,000 before being allowed to dismiss the suit—an amount that was subsequently reduced to $15,000.  (*Id.* at ¶¶18-21.)  Ironically, this nuisance value demand bears no relationship to the damages that Microchip seeks here.

The next day, Vantage sent correspondence (Dkt. 70-7) detailing how all of Microchip's complaints about Vantage were unfounded and reiterating (*see id.* at page 4) Vantage's willingness to settle this action on a walk-away basis as Microchip had offered less than three days earlier.  (Chan Decl. at ¶19.)  Microchip again rejected this offer.  (*Id.* at ¶21; Dkt. 70-8.)

Despite Microchip's unreasonable and unfounded demand, in light of the Court's preliminary rulings on claim construction issues on October 28 (issues that Microchip ***never***

identified as forming the basis for a potential fee request, and *still* does not point to (Chan Decl. at ¶20)), Vantage simply chose to dismiss the remaining patent, which it formally did a few days later.  (Chan Decl. at ¶27.)

### III. THERE IS NO BASIS FOR AWARDING MICROCHIP FEES AND COSTS

While Microchip asserts that Vantage engaged in sanctionable behavior, no such behavior occurred.  Indeed, it was Microchip who behaved badly in trying to strong-arm Vantage for money when Vantage offered to, and did, timely dismiss its claims.

#### A. It Was Microchip Who Unnecessarily Prolonged This Action

Three significant conclusions can be drawn from the actual facts here.  First, Vantage promptly and reasonably accepted (within less than two days) Microchip's October 27 offer of a walk-away settlement, only to be told that Microchip had withdrawn the offer.  Second, nothing of relevance occurred between the October 27 offer and October 29 with respect to any issue that Microchip had raised.  (Chan Decl. at ¶15-16.)  Third, any activities after October 29 (e.g., preparing for a *Markman* hearing, seeking summary judgment, etc. with five of six attorneys billing time at greater than $750/hour) were the direct result of Microchip's refusal to recognize Vantage's offer acceptance and *not* Vantage's actions.  At all times, Vantage acted reasonably and promptly.  If anyone should be sanctioned, it is Microchip.

#### B. Vantage Litigated Entirely Reasonably

Microchip's Motion asserts that Vantage litigated this action "in an unreasonable manner" in four different ways (Motion at 6-8) but none withstands scrutiny.

##### 1. Vantage's Settlement Demands Were Reasonable

Microchip's leading contention—that Vantage made unreasonable settlement demands (Dkt. 70 at 6)—is false.  For example, Microchip contends that there were only $3.1 million in sales at issue (*id.* at 1-3, 6), but this relates to only the one of the patents in suit, the '606 patent. Microchip fails to acknowledge to the Court: (a) the much larger cost savings realized by using

3

the methods claimed in the '508 patent, which remained in the case until October; and (b) other infringing products associated with the '606 patent that likely would have been uncovered during fact discovery. Indeed, Microchip previously conceded, but omitted in its Motion, that its $3.1 million in sales *excluded* cost saving damages on a vast array of additional products based on the '508 patent. (Chan Decl. at ¶9; Dkt. 70-16.))

Accounting for these other damages categories dramatically changes the situation. Vantage's pre-suit investigation and damages' expert's analysis revealed that Microchip's sales and cost savings at issue were orders of magnitude higher than Microchip's assertion. (Chan Decl. at ¶¶29-30.)[2] As such, an initial settlement position of $1.25 million, particularly while the '508 patent remained in the case, was entirely reasonable. *See Phoenix Licensing, LLC v. Consumer Cellular, Inc.*, No. 2:16-cv-00152-JRG-RSP, 2018 U.S. Dist. LEXIS 40210, at *12 (Mar. 12, 2018) (rejecting claim that Plaintiffs litigated unreasonably when their initial settlement offer was $938K and "far greater than amounts typically seen in 'nuisance' cases"); *see also Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 849 (E.D. Tex. 2017) ("it is not the absolute value of the settlement but rather the prospective recovery that must be evaluated").

Notably, Vantage only stated that the economics no longer made sense for the case to continue *after* the parties jointly moved to dismiss the '508 patent on September 29, 2020. Hence, any contention that Vantage should have dismissed in July (Dkt. 70 at 6), *before* the '508 patent was withdrawn (and before it had any financial information), falls flat.

Just as significantly, while Microchip contended that there were only $3.1 million in sales for products accused of infringing the '606 patent, it came to light during October settlement negotiations that Microchip had not included sales information for an additional category of

---

[2] Vantage's expert analyses could not be disclosed here without potentially waiving work product or attorney-client privilege. However, should the Court desire to review them *in camera*, Vantage is prepared to provide them.

4

potential damages—products sold abroad that had been tested in the U.S. (Chan Decl. at ¶11 and Ex. 4.) In light of these facts, Vantage's prior offer for settlement was entirely reasonable.

### 2. Vantage Did Not Delay, Much Less "Routinely Delay," Notice of Changed Litigation Positions

Microchip cites two alleged examples of Vantage "demonstrate[ing] a careless disregard for Microchip's expenses by routinely delaying notice of changed litigation positions" (Motion at 6-7) but they relate to a *single* event that supports Vantage's reasonableness in *avoiding* unnecessary litigation expense. First, Microchip laments that its attorney and expert fees were warranted because Vantage canceled the deposition of Microchip's expert "at the last minute" (Dkt. 70 at 6-7), but there is no demonstration, nor could there be, of bad faith. Dr. Watts' deposition was scheduled for September 22. (Chan Decl. at ¶6.) On September 21, after completing its '508 investigation, Vantage concluded that it would withdraw the '508 patent from both this action and the parallel T.I. action. (*Id.* at ¶7; Ex. 14.) Vantage immediately contacted Microchip to cancel the deposition to save both parties time and expense. This is the opposite of the kind of bad faith that would make this case "exceptional."

Microchip also complains that Vantage "waited until two days before the responsive claim construction brief deadline" to dismiss the '508 patent (Dkt. 70 at 7), but here *Microchip is complaining again about the exact same event*, and again without basis. The timing of the '508 patent withdrawal was driven by Vantage's diligent investigation of prior art supplied by another litigant. As soon as Vantage determined it would withdraw the patent, it notified Microchip so that the parties could eliminate any unnecessary expense.

In short, Vantage actually demonstrated good regard for Microchip's expenses and promptly notified Microchip of any "changed litigation positions." Its decision to voluntarily cancel Dr. Watt's deposition and timely withdraw the '508 patent, all without involving the Court, is the exact type of reasonable conduct that litigants are encouraged to undertake.

### 3. Microchip, Not Vantage, Misrepresented Facts to this Court

To paint Vantage as a bad actor, Microchip falsely asserts that Vantage misrepresented to this Court that the parties had agreed to forego the *Markman* hearing.  (Dkt. 70 at 4-5, 7-8.)  On the contrary, Microchip agreed to this very thing ***in writing***.  Microchip stated unambiguously in its November 3, 2020, letter (Dkt. 70-10 at 2) that "***if Vantage desires to avoid the expense of the Markman hearing***, ***Microchip is amenable to letting the Court decide the issues without oral argument***" (emphasis added).  Microchip's agreement to forego the oral argument was the very basis for the statement that Vantage made to the Court: "[B]oth parties agreed that the upcoming Markman hearing . . . be canceled."  (Dkt. 70-11; *see also* Dkt. 70 at 7.)

Microchip contends that its agreement was conditioned on the "entry of a claim construction order memorializing the preliminary constructions" (Dkt. 70 at 7-8) but its November 3 statement carried no such precondition (although the rest of the letter included many inaccurate statements, *see* Chan Decl. at ¶¶24-25).  To the extent that some prior correspondence included conditions, the failure to mention them along with its unequivocal statement in the November 3 letter suggests that they were ***withdrawn*** as of that letter.

Microchip also cites to *My Health, Inc. v. ALR Techs., Inc.*, 2017 U.S. Dist. LEXIS 209273 (E.D. Tex. Dec. 19, 2017), as the basis for attorney fees (Dkt. 70 at 8) but that case is easily distinguishable because there the court explicitly found that the patentee had made several specifically untrue statements to a court that were never explained.  *Id.* at *19-*20.  Here, Vantage made no misrepresentation whatsoever.  Microchip now has.

### 4. Vantage's Own Claims For Sanctions Are Well-Supported

Microchip asserts that Vantage "repeatedly threaten[ed] to seek fees of its own if Microchip proceeded with this motion."  (Dkt. 70 at 8.)  But Microchip ignores Vantage's prior articulation of ***why*** Vantage would do so—namely, Microchip's numerous omissions,

6

mischaracterizations, and deficiencies in Microchip's quest for attorney fees; all of which are present within Microchip's Motion. As one example, Microchip identified among others four alleged bases for seeking attorney fees in its October 27 letter (Dkt. 70-4): (1) a purported failure to "supplement [ ] preliminary contentions to reflect the withdrawal of certain infringement allegations against these products" (*id.* at 1-2); (2) purported "infringement allegations based on prior art" (*id.* at 2); (3) a purported lack of "requisite standing to initiate this case" (*id.*); and (4) Microchip's purported identification of anticipatory prior art by "a named inventor . . . and other AMD employees." (*Id.*). Shortly thereafter, Vantage debunked all of these meritless allegations in writing. (Dkt. 70-7.) That these alleged bases were all frivolous is demonstrated by the fact that ***Microchip does not include any of them in the present motion***.

Nevertheless, Microchip presented several of these meritless allegations in its November 3 letter. (Chan Decl. at ¶23-25.) That Microchip chose to continue its strong-arming demand for payment based, in part, on these frivolous allegations fully supports Vantage's right to pursue sanctions. In Section IV below, Vantage cross-moves for its fees and costs—following through on its earlier warnings.

### C. Vantage Did Not File Multiple Nuisance Suits

Microchip's trumped-up assertion that Vantage filed multiple suits with the sole intent of forcing nuisance settlements without testing the merits of its actions (Dkt. 70 at 8-9) cannot withstand scrutiny in view of the factual record. First, Vantage filed only nine actions (Chan Decl. at ¶36), from which no improper motive could be drawn. *SFA Sys. v. Newegg Inc.*, 793 F.3d 1351 (Fed. Cir. 2015) ("The mere existence of these other suits does not mandate negative inferences about the merits or purpose of this suit"); *see also ThermoLife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1363 (Fed. Cir. 2019) ("filing a large number of suits does not, by itself, justify an inference of such an improper motive").

Second, none of the parallel actions settled "on the cusp of a merits determination" as in *My Health, Inc. v. ALR Techs., Inc.*, 2017 U.S. Dist. LEXIS 209273 at *16 (E.D. Tex. Dec. 19, 2017), and Microchip has not offered any contrary evidence (Chan Decl. at ¶37). Third, there is evidence that Vantage had every "intention of testing the merits." Indeed, Vantage *did* test the merits in this action through validity.³ Moreover, in the parallel action against Texas Instruments, Vantage deposed two experts, participated in multiple third-party discovery, responded to at least one *inter partes review* petition, and fully briefed at least two motions for summary judgment. (Chan Decl. at ¶38.) These facts, as in *SFA Sys.* where fees were denied despite multiple suits and multiple settlements, amply support no improper motivations.

Most importantly, while "there is no minimum damages requirement to file a patent infringement case," *Thermolife*, 922 F.3d at 1364 (citing *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1361 (Fed. Cir. 2017)), there is no evidence that the other suits settled for nuisance values. Indeed, the amount obtained by Vantage from the other actions is orders of magnitude more than that ***and Microchip knew this*** from settlement documents produced to it in this action. (Chan Decl. at ¶36).⁴ That Microchip even makes the argument is disingenuous.

Microchip implies nefarious intent from the fact that the actions were filed "just weeks before both patents expired" (Dkt. 70 at 9) but ignores the six-year statutory lookback damages period that was fully available for the '508 patent. That patent involved direct infringement of method claims, such that no notice was required for either indirect infringement or marking. 35 U.S.C §§ 286-287. Thus, that the patents were to expire "[does] not tend to support [ ] a finding" of a pattern of misconduct. *Thermolife Int'l*, 922 F.3d at 1362-63.

---

³ As another example, when Microchip argued a standing issue, Vantage was confident enough in the merits that it offered to walk-away if Microchip filed and won a standing motion, provided that Microchip would agree to pay $150K if the motion failed. (Dkt. 70-4 at 3.)

⁴ The settlements are subject to third party confidentiality obligations and, thus, are not discussed in detail. Should the Court desire to review them *in camera*, they will be promptly provided.

8

Microchip also cites to *Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 2765 (2020), for the notion that decreasing settlement demands in advance of case deadlines support a fees award. (Dkt. 70 at 9.) That case, however, involved: (a) "frivolous" and "meritless" litigation positions; (b) unreasonable withholding of discovery; (c) the filing of a dismissal without prior notice on the "same day that pretrial submissions were due"; and (d) the filing of over 100 lawsuits. *Id.*, 944 F.3d at 914, 917. None of those facts are present here. The decreasing settlement demand was the natural product of withdrawing the '508 patent, not any unreasonable position.

### D.  Vantage Conducted Reasonable Pre-Filing Investigations

Microchip's final argument—that Vantage failed to conduct a reasonable pre-filing investigation—focuses solely on two alleged flaws in Vantage's initial contentions (Dkt. 70 at 9-10). However, the first was a trivial inadvertent error, the second was not a flaw at all. Moreover, two together involved only a tiny fraction of the hundreds of other products implicated in this litigation. (Chan Decl. at ¶¶31-33.)

In particular, the ADV7611 product was inadvertently included in a long list of accused products as one exemplary model within a particular product line— HDMI-compliant receivers. (*Id.* at ¶31.) Microchip had never disputed that its HDMI-compliant receivers included the accused features and/or functionality. Vantage agreed to remove the product from its contentions only days after the issue was brought to Vantage's attention. (*Id.* at ¶¶31-32.)

As to the few products that Microchip claimed lacked the infringing feature, Vantage had fully explained how they infringed in a lengthy letter on August 28, 2020, including how they offered the accused "hot plug detect" functionality. (Dkt. 70-15 at 1-3.) Nevertheless, as part of a much wider negotiation between the parties, that involved Vantage providing revised infringement contentions—negotiations where even Microchip conceded that that parties had

9

made "significant progress"—Vantage reasonably offered to drop such products subject to the possibility of adding them back should discovery uncover additional evidence. (Chan Decl. at ¶¶32-34.) Nothing in these facts supports any inference that Vantage's pre-suit investigation was inadequate. Tellingly, Microchip does not, and cannot, dispute that the vast majority of the accused products do include the infringing feature.

### IV. THIS COURT SHOULD AWARD VANTAGE ITS ATTORNEY FEES AND COSTS FOR OPPOSING MICROCHIP'S FRIVOLOUS MOTION

The court has the inherent power to award attorney fees for, among other things, parties acting in "bad faith, vexatiously, wantonly, or for oppressive reasons." *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *see also Toon v. Wackenhut Corrections Corp.*, 250 F.3d 950, 952 (5th Cir. 2001) ("When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions").

As shown in detail above, Microchip's Motion is frivolous. Each argument of alleged bad acts is unfounded and is predicated on mischaracterizations. The only party who unreasonably prolonged this action was Microchip. (*See* Section III.A. above; *see also* Chan Decl. at ¶¶16, 24-25, 36.) As such, not only should Microchip's Motion be denied but Vantage should be awarded its attorney fees incurred after October 29, 2020, for being put to the trouble of preparing this Opposition. Vantage hereby cross-moves for the awarding of such fees.[5]

### V. CONCLUSION

For all of the reasons discussed above, Microchip's Motion should be denied and Vantage should be awarded its fees for efforts spent opposing that Motion.

---

[5] While Vantage previously indicated to Microchip that it would file a Rule 11 motion in response to Microchip's Motion, Vantage believes that the most efficient manner for addressing the issue is the Court's inherent power. Should the Court desire that Vantage address the sanctions issue in a different manner, Vantage will follow the Court's preference.

Case 6:19-cv-00581-ADA Document 72 Filed 12/21/20 Page 14 of 15

Date: December 21, 2020

                                                DEVLIN LAW FIRM LLC

                                                */s/ Alex Chan*
                                                Timothy Devlin
                                                tdevlin@devlinlawfirm.com
                                                Henrik D. Parker
                                                hparker@devlinlawfirm.com
                                                Alex Chan
                                                State Bar No. 24108051
                                                achan@devlinlawfirm.com
                                                DEVLIN LAW FIRM LLC
                                                1526 Gilpin Avenue
                                                Wilmington, Delaware 19806
                                                Telephone: (302) 449-9010

                                                *Attorneys for Plaintiff Vantage Micro LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2020, I caused a copy of this document to be served by transmitting it via e-mail or electronic transmission to counsel of record for Defendant.

*/s/ Alex Chan*
Alex Chan